# Third District Court of Appeal

## State of Florida

Opinion filed March 30, 2022.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D18-1981
Lower Tribunal No. F10-9995
_____


**Fermin Recalde,**
Appellant,

vs.

**The State of Florida,**
Appellee.


An Appeal under Florida Rule of Appellate Procedure 9.141(b)(3) from the Circuit Court for Miami-Dade County, Oscar Rodríguez-Fonts, Judge.

J. Rafael Rodríguez, Special Assistant Public Defender, for appellant.

Ashley Moody, Attorney General, and Linda S. Katz, Assistant Attorney General, for appellee.


Before HENDON, MILLER and LOBREE, JJ.

LOBREE, J.

Fermin Recalde appeals from the trial court's order denying his motion

for postconviction relief after conducting an evidentiary hearing on two of twenty-one claims raised. We affirm on all grounds[1] and write solely to address Recalde's claim that he is entitled to a new trial based upon alleged structural error under McCoy v. Louisiana, 138 S. Ct. 1500 (2018), where his trial counsel conceded his guilt of the lesser included offense of manslaughter during closing argument of his first degree murder trial, despite Recalde's insistence that the victim was killed by accident.

Facts and Procedural Background

Recalde had been living with his girlfriend, Dora Rial, and her two children for approximately two years. Problems in the relationship caused Rial to begin packing to move with her children to a new residence the following week. Recalde was concerned that Rial was involved with another man. Rial came home from work early one evening at about 7:00 p.m. because she was going to a surprise birthday party for a co-worker. At that time, her thirteen-year-old daughter, Lizzette, was at home and her adult son

---

[1] Recalde's seventh claim that trial counsel was ineffective in deceiving him regarding his right to testify at trial was properly denied based on counsel's testimony about why she advised him not to testify during the 1.25 hour recess at the close of the State's case and the trial court's thorough colloquy thereafter. The remaining nineteen claims were properly denied as either facially invalid or conclusively refuted by the record citations within the court's detailed, twenty-one page order. See Fla. R. Crim. P. 3.850(f)(5).

was out with friends.  When Rial left for the party, Recalde began to follow her, but instead decided to stop at a mall where he had several drinks at a restaurant.

Recalde returned home at around 2:00 a.m., and Rial was not there. When she came home after 3:00 a.m., Recalde questioned where she had been.  He thought that he saw a hickey on her face when Rial walked away to go to Lizzette's room.  While she was talking to Lizzette about sleeping with her, Recalde went to the kitchen, got a twelve-inch knife and placed it between the mattress and box spring in the bedroom he shared with Rial.

When Rial came out of Lizzette's room he told her they needed to talk. She came into the bedroom, and he pulled her by the hair while holding the knife, demanding to know whom she had been with and who put the hickey there.  Rial told Recalde that he was not going to kill her or do anything to her, and she attempted to leave.  Recalde told the police that he then lost it, grabbed her by the hair and "poked" her twice in the chest with the knife. Lizzette heard arguing and her mother screaming to call 911.  While Lizzette called 911, her mother tried to open the front door, but collapsed.  Rial later died at the hospital.

Recalde left the residence after stabbing Rial.  He threw the knife into the grass as he got into Rial's car.  He called 911 requesting that an

3

ambulance go to the house because he thought he killed his "wife" with a knife. He also said he wanted to turn himself in and was looking for the police station. After he arrived at the police station, he cooperated with police requests for photos, his clothing, swabs of apparent blood and an oral DNA standard, and consent to search the house.

Recalde gave a taped confession. Photos were taken of suspected blood spatter on the master bedroom nightstand and wall, with a blood trail leading into the living room, hallway, and to Lizzette's bedroom door. No blood was found in the kitchen or family rooms. DNA analysis later confirmed that Rial's blood was on Recalde's shirt and shorts. Police recovered the knife with a blade measuring 7¾ inches. The medical examiner testified that two stab wounds in Rial's upper chest were made by a sharp instrument such as a knife. Each was approximately 7½ inches long, and the fatal wound penetrated her left lung and heart. Force would have been required to inflict wounds of that depth, as well as to remove the knife between thrusts. Other than bruising on the chin and neck, consistent with an unprotected fall, Rial had no other injuries.

The State charged Recalde with first degree murder with a deadly weapon (knife). Pre-trial, Recalde rejected a thirty-year plea offer. A first trial ended in a mistrial declared near the close of the State's case. A new

4

trial began on February 11, 2013. The jury returned a verdict of guilty of first degree murder, and Recalde was sentenced to life in prison without the possibility of parole. His conviction was affirmed on direct appeal. See Recalde v. State, 163 So. 3d 1211 (Fla. 3d DCA 2015).

On July 28, 2016, Recalde filed a timely motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850, raising twenty-one grounds for relief. Claim one alleged in pertinent part that Recalde told his counsel that he was innocent as Rial's death was an accident (during the "heat of passion"). He relied on Smallwood v. State, 809 So. 2d 56 (Fla. 5th DCA 2002) (citing Nixon v. Singletary, 758 So. 2d 618 (Fla. 2000)), to contend that his counsel was per se ineffective for conceding that he was guilty of manslaughter in closing argument, without first obtaining his consent. Recalde further argued that had he been informed that counsel would make this concession, he would have vehemently refused to allow any concession to any charge, and that he had a due process right to make the final decision about his defense.

In February and June 2017, the trial court ruled that it was required to hold an evidentiary hearing on claims one and seven. Recalde was advised that the court would enter an order as to the remaining issues. Thereafter, counsel was appointed to represent Recalde. Postconviction counsel

reviewed transcripts of both trials, conducted additional investigation, and decided not to file an amended postconviction motion.

An evidentiary hearing was conducted on June 20, 2018. At the outset, the court noted that it had not denied any claims or entered an order yet. The State announced it was ready on the two claims set for hearing. Defense counsel asserted that he could present evidence on the other claims as well.

Recalde testified that his trial counsel did not discuss with him the strategy of admitting guilt of manslaughter to avoid conviction for first degree murder or obtain his consent for this. He stressed that his attorney knew that he had rejected a plea offer of thirty years. Rather, Recalde believed that his attorney would argue that Rial's injury was an accident, as he told everyone it was a mistake from the first moment.[2] Recalde testified that Rial came at him in an aggressive manner, and that was when he stabbed her. He stood and demonstrated for the court how he acted.[3] Recalde insisted

---

[2] At the evidentiary hearing, the State stipulated that Recalde had always claimed that Rial's death was an accident.

[3] Near the end of the hearing, the court described Recalde's movements in reenacting his actions while testifying. The court explained for the record that Recalde held his arm parallel to the floor and made downward lunges of his arm from his elbow to his fist. When postconviction counsel argued that Recalde acted instinctively when Rial came toward him, the court questioned that he acted instinctively to stab her twice.

that he did not kill Rial, because he only injured her, left her alive, and called for her aid, so he expected his attorney to argue this to the jury.

Recalde's trial counsel testified that she reviewed the transcript of his first trial and then they had a face-to-face interview of several hours where Recalde explained everything he had testified about to her in detail. They met a second time with her co-counsel and discussed points Recalde wanted them to argue regarding each witness, and those they disagreed about. Counsel discussed weaknesses in the case with Recalde, which she felt prevented arguing for acquittal on the basis of accident. She thought the best defense was accident/manslaughter, which she and co-counsel discussed with Recalde for hours. She explained:

> I think Mr. Recalde had a hard time understanding that arguing accident in terms of a manslaughter was the best defense given the specific weaknesses that we had in this case. We had two stab wounds, we had the depth of the injury of the stab wounds, and we had the angle in which the stab wounds occurred. Those were going to be forensically brought to the jury and they were going to be problematic for us to argue a straight up accident acquittal.

Trial counsel testified that she explained the consequences of an accident/manslaughter defense, which was basically an admission to a potential sentence of thirty years, and Recalde acquiesced to this defense. Recalde raised no objection to counsel's argument during trial and never told

7

counsel he did not agree to the manslaughter admission. However, trial counsel acknowledged that after closing, Recalde said that he did not agree with certain things in her argument, and she advised him to write down these points and keep records.

Postconviction counsel argued that Recalde did not need to show prejudice resulting from his claim of deficiency of trial counsel who was per se ineffective for effectively pleading her client guilty without his consent, relying upon Nixon and United States v. Cronic, 466 U.S. 648 (1984).[4] In denying relief, the trial court cited Atwater v. State, 788 So. 2d 223, 229-31 (Fla. 2001), which found that there was meaningful adversarial testing and no Sixth Amendment violation in a case where counsel conceded a client's guilt of a lesser-included crime without first securing his express consent. The trial court noted that it was not until closing that Recalde's counsel made the tactical decision to argue that the State did not prove first degree murder, but rather manslaughter. Further, the court found that even if trial counsel had denied that Recalde was guilty of any crime, there was "no reasonable possibility that the jury would have reached a different conclusion given the

---

[4] The decision in McCoy was issued a month before the evidentiary hearing and four months before the order on appeal. Nevertheless, the parties failed to bring the opinion or its effect upon the analysis applicable to counsel's conduct to the trial court's attention.

8

evidence against him." Id. at 232. The court accepted trial counsel's testimony that Recalde agreed to the defense, despite his claim that they never spoke about an accidental manslaughter defense. The trial court found that trial counsel's decision was a reasonable strategy based on her twenty years of experience as a criminal defense attorney. This appeal followed.

Standard of Review

"When the trial court denies a 3.850 motion alleging ineffective assistance of counsel after it holds an evidentiary hearing, a mixed standard of review applies. Questions of fact are reviewed for competent and substantial evidence, while questions of law are reviewed de novo." McFarlane v. State, 314 So. 3d 648, 650-51 (Fla. 3d DCA 2021) (citing Wickham v. State, 124 So. 3d 841, 858 (Fla. 2013)).

Analysis

Recalde contends that the trial court erred in denying relief based upon its conclusion that trial counsel made a reasonable tactical or strategic decision to concede his guilt of the lesser included offense of manslaughter based on her experience. Recalde argues that a defendant has a structural Sixth Amendment right to insist that counsel refrain from an admission of the defendant's guilt even where counsel believed that admitting guilt to avoid a

9

harsher sentence was the defendant's best chance.

In Florida v. Nixon, 543 U.S. 175, 178 (2004), the Supreme Court considered whether the Constitution bars counsel from conceding a capital defendant's guilt at trial when the defendant, informed by counsel, neither consents nor objects to counsel's proposed concession strategy. In these circumstances, the Court determined that a "presumption of prejudice is not in order based solely on a defendant's failure to provide express consent to a tenable strategy counsel has adequately disclosed to and discussed with the defendant." Id. at 179. "Instead, if counsel's strategy, given the evidence bearing on the defendant's guilt, satisfies the Strickland[5] standard, that is the end of the matter; no tenable claim of ineffective assistance would remain." Id. at 192.

In McCoy, the Court distinguished its holding in Nixon, 543 U.S. at 179, and held that where a defendant "expressly asserts that the objective of '*his* defence*'* is to maintain innocence of the charged criminal acts, his lawyer must abide by that objective and may not override it by conceding guilt." 138 S. Ct. at 1509 (quoting Amend. VI, U.S. Const.). The defendant in McCoy "vociferously insisted that he did not engage in the charged acts and

---

[5] Strickland v. Washington, 466 U.S. 668 (1984).

adamantly objected to any admission of guilt." Id. at 1505. Given those facts, the Supreme Court found that the "[a]utonomy to decide that the objective of the defense is to assert innocence" is reserved for a defendant. Id. at 1508. The Court concluded that it was structural error not subject to harmless error review for trial counsel to disregard the defendant's desire to maintain his innocence rather than to concede guilt in an attempt to eliminate the possibility of a death penalty sentence. Id. at 1510-11.

For a structural Sixth Amendment violation to lie, a defendant must make his intention to maintain innocence clear to his counsel, and counsel must override that expressed objective by conceding guilt despite the client's "intransigent and unambiguous objection" to this strategy. Id. at 1507. Here, Recalde does not contend that he did not engage in the charged acts, but rather that his acts were merely a "reaction" to Rial's movement and an accident. Moreover, Recalde does not claim that counsel conceded his guilt of the lesser included offense of manslaughter over his express objection. Rather, he maintains that she failed to discuss the matter with him. In denying relief, the trial court accepted trial counsel's testimony that she discussed with Recalde her tactical decision to argue in closing that the State proved only the lesser-included offense of manslaughter. In so doing, the court noted counsel's testimony that the "real issue at hand is that [Recalde]

11

had a hard time understanding that this was the best defense due to the specific evidentiary weaknesses in this particular case."

Recalde contends that the trial court should not have believed counsel's testimony that he was aware of, and acquiesced to, the strategy of conceding guilt to the lesser charge and attacking only the murder charge. However, this court gives deference to a postconviction court's superior ability to judge the credibility of witnesses who appeared before it and the weight to be given to the evidence. See Smith v. State, 330 So. 3d 867, 886 (Fla. 2021).

Given the trial court's findings, we reject Recalde's argument that trial counsel impermissibly relied on a defense that he had expressly rejected. As such, Recalde's claim is not a McCoy claim, but simply an allegation that trial counsel failed to consult with him in advance of her closing argument. In Atwater v. State, 300 So. 3d 589, 590-91 (Fla. 2020), the Florida Supreme Court held that absent an allegation that counsel conceded guilt over his express objection, the defendant was not entitled to relief under McCoy. See also Harvey v. State, 318 So. 3d 1238, 1240 (Fla. 2021) (allegation that trial counsel failed to consult with defendant prior to conceding guilt is not McCoy claim of structural error). Competent substantial evidence supports the trial court's conclusion that trial counsel's decision was a valid strategic choice

12

based upon her experience and the facts of this case.

Accordingly, the denial of postconviction relief is affirmed.