894 So.2d 28 (2004)
Harry Franklin PHILLIPS, Appellant,
v.
STATE of Florida, Appellee.
Harry Franklin Phillips, Petitioner,
v.
James V. Crosby, Jr., etc., et al., Respondents.
Nos. SC00-2248, SC01-1460.
Supreme Court of Florida.
October 14, 2004.
As Revised on Denial of Rehearing January 27, 2004.
*31 William M. Hennis, III, Assistant CCRC and Leor Veleanu, Staff Attorney, Law Office of the Capital Collateral Regional Counsel, Ft. Lauderdale, FL, for Appellant/Petitioner.
Charles J. Crist, Jr., Attorney General, Tallahassee, FL, and Sandra S. Jaggard, Assistant Attorney General, Miami, FL, for Appellee/Respondent.
PER CURIAM.
Harry Franklin Phillips, an inmate under the sentence of death, appeals an order of the circuit court denying his amended motion for postconviction relief under Florida Rule of Criminal Procedure 3.850 and petitions this Court for a writ of habeas corpus. We have jurisdiction. See art. V, § 3(b)(1), (9), Fla. Const. For the reasons that follow, we affirm the denial of Phillips's postconviction motion and deny the petition for habeas corpus.

I. PROCEEDINGS TO DATE
We have explained the facts of the case in a previous opinion:
In the evening of August 31, 1982, witnesses heard several rounds of gunfire in the vicinity of the Parole and Probation building in Miami. An investigation revealed the body of Bjorn *32 Thomas Svenson, a parole supervisor, in the parole building parking lot. Svenson was the victim of multiple gunshot wounds. There apparently were no eyewitnesses to the homicide.
As parole supervisor, the victim had responsibility over several probation officers in charge of appellant's parole. The record indicates that for approximately two years prior to the murder, the victim and appellant had repeated encounters regarding appellant's unauthorized contact with a probation officer. On each occasion, the victim advised appellant to stay away from his employees and the parole building unless making an authorized visit. After one incident, based on testimony of the victim and two of his probation officers, appellant's parole was revoked and he was returned to prison for approximately twenty months.
On August 24, 1982, several rounds of gunfire were shot through the front window of a home occupied by the two probation officers who had testified against appellant. Neither was injured in the incident, for which appellant was subsequently charged.
Following the victim's murder, appellant was incarcerated for parole violations. Testimony of several inmates indicated that appellant told them he had killed a parole officer. Appellant was thereafter indicted for first-degree murder.
Phillips v. State, 476 So.2d 194, 195-96 (Fla.1985).
In 1983, Phillips was convicted of one count of first-degree murder in the death of a parole supervisor named Bjorn Svenson and sentenced to death. On direct appeal, we affirmed that sentence. See Phillips, 476 So.2d at 194.[1]
On November 4, 1987, Phillips filed a petition for writ of habeas corpus in this Court raising one claim: that comments by the court and prosecutor throughout the course of the proceedings resulting in Phillips's sentence of death diminished the jurors' sense of responsibility for the capital sentencing task that they were to perform, and had an effect on the jury, in violation of Caldwell v. Mississippi, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985), and the Eighth and Fourteenth Amendments. We denied the petition, finding the claim procedurally barred. See Phillips v. Dugger, 515 So.2d 227, 228 (Fla.1987).
The same day that Phillips filed his petition for writ of habeas corpus, he also filed in the trial court a motion for postconviction relief raising ten claims.[2] After an *33 evidentiary hearing, the trial court denied the motion. On appeal, we found that Phillips had received ineffective assistance of counsel at the penalty phase of the trial and vacated his death sentence and remanded for a new sentencing proceeding. See Phillips v. State, 608 So.2d 778, 783 (Fla.1992).
In April 1994, a new jury, by a vote of seven to five, again recommended a sentence of death. The trial court followed the jury's recommendation and found the following four aggravators: (1) the defendant was under a sentence of imprisonment at the time of the murder; (2) the defendant had prior convictions for violent felonies; (3) the murder was committed to disrupt or hinder the lawful exercise of a governmental function or the enforcement of laws; and (4) the murder was committed in a cold, calculated, and premeditated fashion. The trial court did not find any statutory mitigators, but it found that the following nonstatutory mitigators applied: (1) Phillips's low intelligence (given little weight); (2) Phillips's poor family background (given little weight); and (3) his abusive childhood, including lack of proper guidance by his father (given little weight). Phillips again appealed his sentence, raising six issues.[3] We affirmed the sentence. See Phillips v. State, 705 So.2d 1320 (Fla.1997).
On September 13, 1999, Phillips filed a motion for postconviction relief. He subsequently filed an amended motion for postconviction relief raising twenty-four claims on December 2, 1999.[4] The trial *34 court held a hearing pursuant to Huff v. State, 622 So.2d 982 (Fla.1993), and thereafter summarily denied Phillips's amended motion.
Phillips now appeals the trial court's denial of his postconviction motion and petitions for a writ of habeas corpus, raising four claims of ineffective assistance of appellate counsel. For the reasons explained below, we affirm the denial of postconviction relief and deny the petition for habeas corpus. In light of the United States Supreme Court's decision in Atkins v. Virginia, 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002), however, and our recent adoption of a rule implementing that decision, see Amendments to Florida Rules of Criminal Procedure & Florida Rules of Appellate Procedure, 875 So.2d 563 (Fla.2004), we deny relief without prejudice to Phillips seeking relief under that rule. We express no opinion about the merits of such a motion.

II. 3.850 APPEAL
Phillips raises eleven claims: (1) the trial court improperly denied his postconviction claims without an evidentiary hearing;[5] (2) resentencing counsel was ineffective for failing to argue that section 921.137, Florida Statutes (2001), prohibiting the imposition of the death sentence on mentally retarded defendants, applied to him; (3) his right to due process was violated when the trial judge denied his claim regarding public records disclosure and his motion to disqualify the trial judge; (4) the following sub-claims concerning the jury were improperly denied as procedurally barred and meritless: (a) failure of resentencing counsel to use all of his peremptory challenges; (b) the trial court's jury instructions diminished the jury's sense of responsibility; (c) the prosecutor's remarks during opening and closing arguments in voir dire; (d) trial court's jury instructions *35 regarding voting procedures; (e) the trial court's jury instructions concerning premeditation and the CCP aggravator; (f) jury instructions regarding feelings of prejudice, bias, and sympathy; and (g) not having the opportunity to interview the jurors; (5) the trial court and the prosecutor improperly shifted the burden of proof to the defendant to establish that mitigating circumstances outweighed the aggravating circumstances; (6) the following prosecutorial comments concerning nonstatutory aggravating circumstances were improper: (a) comparing Phillips to his siblings; (b) Phillips's future dangerousness; and (c) the State's use of a door-sized prop that charted Phillips's behavior during parole; (7) the trial court erred in summarily denying his claim that he is innocent of the death penalty; (8) Phillips cannot be put to death due to insanity; (9) the trial court improperly relied upon Phillips's two prior felony convictions during his resentencing in violation of Johnson v. Mississippi, 486 U.S. 578, 108 S.Ct. 1981, 100 L.Ed.2d 575 (1988); (10) Phillips's absence from unrecorded bench conferences violated his right to be present at trial; and (11) cumulative error.
The bulk of Phillips's claims on appeal are procedurally barred or without merit.[6] We address only certain claims that are not procedurally barred.

A.
In claim 4(a), Phillips contends that his resentencing counsel rendered ineffective assistance when he failed to exercise his two remaining peremptory challenges. This Court has repeatedly held that in order to establish a claim of ineffective assistance of counsel a defendant must prove two elements:
First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.
Valle v. State, 778 So.2d 960, 965 (Fla.2001) (quoting Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). In Valle, this Court explained further:
In evaluating whether an attorney's conduct is deficient, "there `is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance,'" and the defendant "bears the burden of proving that counsel's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy." This Court has held that defense counsel's strategic choices do not constitute deficient conduct if alternative courses of action have been considered *36 and rejected. Moreover, "[t]o establish prejudice [a defendant] `must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'"
Id. at 965-66 (citations omitted) (quoting Brown v. State, 755 So.2d 616, 628 (Fla.2000), and Williams v. Taylor, 529 U.S. 362, 391, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)).
Phillips's claim that resentencing counsel rendered ineffective assistance when he failed to exercise his two remaining peremptory challenges is meritless. No statute, rule, or case law requires a defense attorney to exercise all peremptory strikes. Moreover, peremptory challenges are not constitutional rights or of "constitutional dimension." Ross v. Oklahoma, 487 U.S. 81, 88, 108 S.Ct. 2273, 101 L.Ed.2d 80 (1988). "[Peremptory challenges] are a means to achieve the end of an impartial jury." Id. The ultimate result of voir dire is achieving an impartial jury, and Phillips fails to demonstrate that his resentencing counsel's performance was deficient during voir dire and that such deficiency created a jury that was not impartial.

B.
Phillips's eighth claim asserts that he cannot be executed due to insanity. However, this claim cannot be raised until an execution is imminent. See Fla. R.Crim. P. 3.811(c) (providing that "[n]o motion for a stay of execution pending hearing, based on grounds of the prisoner's insanity to be executed, shall be entertained by any court until such time as the Governor of Florida shall have held appropriate proceedings for determining the issue pursuant to the appropriate Florida Statutes"). Phillips's execution is not imminent; no warrant has been issued and no date has been set. Thus, this claim is untimely, and the trial court properly denied it without an evidentiary hearing. See Hall v. Moore, 792 So.2d 447, 450 (Fla.2001).

C.
Phillips's ninth claim asserts that the trial court improperly relied on two of his prior felony convictions during resentencing, in violation of Johnson v. Mississippi, 486 U.S. 578, 108 S.Ct. 1981, 100 L.Ed.2d 575 (1988). The court found that the State presented evidence of two prior felony convictions: (1) armed robbery, Eleventh Judicial Circuit Case No. 73-2480B; and (2) assault with intent to commit first-degree murder, Eleventh Judicial Circuit Case No. 62-6140C. In order to state a claim under Johnson, a defendant must show that the conviction on which the prior violent felony aggravator is based has been reversed. Phillips failed to demonstrate and the record did not indicate that either of these convictions has been set aside, vacated, or reversed. Thus, Johnson does not apply. See Henderson v. Singletary, 617 So.2d 313, 316 (Fla.1993). Therefore, this claim is meritless, and the trial court properly denied it without an evidentiary hearing.

D.
Phillips next contends that the trial court erred in summarily denying other claims, including a claim under Ake v. Oklahoma, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985), and two ineffective assistance of counsel claims concerning resentencing counsel's failure: (1) to present definitive evidence of his organic brain damage and mental retardation; and (2) to argue the application of section 921.137, Florida Statutes (2001). A defendant is *37 entitled to an evidentiary hearing on his motion for postconviction relief unless (1) the motion, files, and records in the case conclusively show that the defendant is not entitled to any relief, or (2) the motion or a particular claim is facially invalid. See Cook v. State, 792 So.2d 1197, 1201-1202 (Fla.2001); Maharaj, 684 So.2d at 728. In determining whether or not an evidentiary hearing on a claim is warranted, we must accept the defendant's factual allegations to the extent the record does not refute them. See Atwater v. State, 788 So.2d 223, 229 (Fla.2001); Peede v. State, 748 So.2d 253, 257 (Fla.1999). The defendant must establish a prima facie case based upon a legally valid claim, and mere conclusory allegations are insufficient to meet this burden. See Freeman v. State, 761 So.2d 1055 (Fla.2000); Kennedy v. State, 547 So.2d 912, 913 (Fla.1989).

1. Presenting Evidence of Mental Retardation
Phillips asserts that the trial court erred by failing to conduct an evidentiary hearing on his counsel's failure to investigate and present further testing as to his possible mental retardation and organic brain damage at the time of his resentencing. Specifically, he contends that resentencing counsel never had him examined by a competent mental health expert for a definitive diagnosis of mental retardation and organic brain damage. Postconviction counsel argued at the Huff hearing and appellate counsel asserted at oral argument that a mental retardation specialist and a neurologist were prepared to testify at an evidentiary hearing about Phillips's mental retardation and organic brain damage.
We disagree that counsel's performance was deficient. The record in this case is replete with mitigation testimony from both of Phillips's mental health experts, each of whom comprehensively evaluated Phillips and provided significant testimony concerning Phillips's possible mental retardation and organic brain damage, such that the record conclusively establishes that counsel was not ineffective in investigating and presenting evidence on this issue.
Both Dr. Joyce Carbonell and Dr. Jethro Toomer testified at Phillips's initial evidentiary hearing in 1988, before we remanded for new sentencing proceedings. See Phillips, 608 So.2d at 778. Dr. Carbonell interviewed Phillips for 4 1/2 hours and reviewed his prison records, personnel records, parole records, school records, jail records, his attorney's file, testimony and depositions, police reports, and affidavits from his family, friends and a school teacher. She even spoke personally to one of Phillips's teachers. Dr. Carbonell administered a battery of tests, including the Wechsler Adult Intelligence Scale Revised (WAIS-R), the Wide Range Achievement test, Level 2 Revised (WRAT-R-2), the Peabody Individual Achievement Test (PIAT), the Rorschach test, the Wechsler Memory Scale, the Canter Background Interference procedure for the Bender Gestalt, and the Minnesota Multiphasic Personality Inventory (MMPI).
Although Dr. Carbonell did not testify personally at Phillips's resentencing  her testimony from the 1988 hearing was read into evidence  it was apparently not due to any lack of diligence on the part of defense counsel. Prior to resentencing, defense counsel asked the trial court to appoint Drs. Toomer and Carbonell as his experts. Defense counsel subsequently indicated that he was having trouble with Dr. Carbonell because she was ill, and was unable to schedule another evaluation by Dr. Carbonell until the middle of trial. The State objected to the lateness of this reevaluation, and the trial court refused to *38 grant a continuance to have Dr. Carbonell reexamine Phillips. On the day resentencing commenced, defense counsel again moved for a continuance because Dr. Carbonell was unavailable. However, the parties agreed to have Dr. Carbonell testify at a time certain, alleviating the need for a continuance. The next day, defense counsel indicated that he would be either introducing Dr. Carbonell's testimony telephonically or having her prior testimony read because her testimony had not changed. Counsel later indicated that Phillips had agreed to use Dr. Carbonell's prior testimony instead of her telephonic testimony. The trial court asked Phillips about this agreement, and Phillips confirmed it.
Dr. Jethro Toomer did testify at the resentencing. He testified that he evaluated Phillips in 1988 and again in 1994. Dr. Toomer met with Defendant for 3 to 3 1/2 hours in 1988 and for an hour in 1994. During his interview, Dr. Toomer gave Phillips the revised Beta IQ test, the Carlson Psychological Survey, the Rorschach test, the Bender Gestalt Design test and the verbal reasoning portion of the WAIS. In preparing to testify, Dr. Toomer also reviewed affidavits from Phillips's family, friends, teachers and coworkers, his school records, DOC records, personnel file, documents used during his interviews with Phillips, Phillips's trial attorney's file and the transcript of his prior testimony and of the original trial. Dr. Toomer reviewed the affidavits and records to corroborate the history Phillips had provided.
The comprehensive mental mitigation investigation performed in this case is a far cry from those cases where we have found error in a trial court's failure to hold an evidentiary hearing to determine whether counsel failed to properly investigate and present evidence in mitigation. See Ragsdale v. State, 720 So.2d 203, 208 (Fla.1998) (holding trial court erred in summarily denying defendant's ineffective assistance of counsel claim where "defense counsel never had him examined by a competent mental health expert for purposes of presenting mitigation" and defendant claimed that, among other things, he suffered from organic brain damage and was mentally retarded); see also Arbelaez v. State, 775 So.2d 909, 913 (Fla.2000) (finding that trial court erred in failing to hold evidentiary hearing regarding defendant's ineffective assistance of counsel claim where defendant alleged that "no expert was appointed to evaluate him for the purposes of presenting mitigation"); O'Callaghan v. State, 461 So.2d 1354, 1355 (Fla.1984) (holding that trial court erred in summarily denying defendant's ineffective assistance of counsel claim where defense counsel never conducted psychiatric examination of defendant and called no mitigation witnesses at the sentencing hearing despite mental health professional's affidavit asserting defendant exhibited evidence of brain damage and mental illness).
Moreover, we find no error in a trial court's failure to hold an evidentiary hearing on a defendant's claim that defense counsel was ineffective for failing to present evidence in mitigation where the record shows similar mitigation evidence was presented through other witnesses. See Atwater, 788 So.2d at 232-34; see also Arbelaez, 775 So.2d at 913 (finding no error in trial court's failure to hold an evidentiary hearing on defendant's claim that defense counsel was ineffective for failing to present adequate evidence or expert testimony as to defendant's epilepsy where the record showed that counsel presented evidence of defendant's epilepsy through defendant's own testimony and the testimony of two of his friends).
In this case, the record is clear that each expert not only testified extensively about the battery of tests administered to Phillips, *39 they each also testified that Phillips was borderline mentally retarded and probably brain-damaged. Dr. Toomer testified that Phillips "is in the borderline range of mental functioning." He also testified that Phillips's results on the Bender Gestalt Design test "suggested some motor perception problems, and there [were] discrepancies that reflected or suggested that there was some organicity or brain damage." Later Toomer stated that the design Phillips drew "indicated or suggested" to him that Phillips had organicity or brain damage. On cross-examination, Toomer testified that he found some evidence of "mild organicity." Dr. Carbonell testified that Phillips had a verbal IQ of 75 and a performance IQ of 77, numerically putting him in the "borderline" range, and that Phillips "is functioning at the level of many retarded people." She also testified that the type of closed head injury that Phillips allegedly sustained do "not infrequently cause brain damage." She later testified that Phillips "possibly had a head injury that could have in fact further damaged his level of functioning." On cross-examination, Carbonell was asked whether Phillips had brain damage, and she responded, "It's a probability. It's certainly a possibility."
Finally, the mere fact that the defense experts' opinions were rejected does not demonstrate that counsel was ineffective. See Teffeteller v. Dugger, 734 So.2d 1009, 1020 (Fla.1999). Instead, the failure can be attributed to Drs. Haber and Miller's opinions that Phillips's intelligence was between average and borderline and that Phillips exhibited no evidence of brain damage. The fact that Phillips now has new experts does not indicate that his counsel was ineffective, where counsel did investigate and present evidence on these issues. See Cherry v. State, 781 So.2d 1040, 1052 (Fla.2000); Rose v. State, 617 So.2d 291, 295 (Fla.1993).
In sum, given the significant mental health investigation and testimony in the record, we hold that the trial court did not err in denying Phillips's claim without an evidentiary hearing. Given that the record reflects that two mental health experts were appointed in Phillips's defense, and each performed a comprehensive mental health evaluation of Phillips and testified thereto, we also affirm the trial court's summary denial of Phillips's Ake claim.

2. Applicability of Section 921.137(1), Florida Statutes (2001)
Phillips next asserts that his resentencing counsel rendered ineffective assistance for presenting insufficient evidence to show that his level of retardation met the criteria set forth in section 921.137(1), Florida Statutes (2001).[7] Resentencing counsel cannot be deemed ineffective, however, because section 921.137, the statute prohibiting the execution of mentally retarded defendants, did not even exist at the time of Phillips's resentencing *40 or subsequent direct appeal.[8] Nevertheless, we do not preclude Phillips from raising the retroactive application of section 921.137 in a subsequent proceeding. Nor do we address the potential merits of a claim under Atkins, 536 U.S. at 304, 122 S.Ct. 2242, or Florida Rule of Criminal Procedure 3.203 (Defendant's/Prisoner's Mental Retardation as a Bar to Execution). Phillips is free to file a motion under rule 3.203. See Amendments to Florida Rules of Criminal Procedure & Florida Rules of Appellate Procedure, 875 So.2d 563 (Fla.2004). We express no opinion regarding the merits of such a claim.
Finally, regarding Phillips's cumulative error claim, Phillips's individual claims are either procedurally barred or meritless. No finding of cumulative error is appropriate under these circumstances. See Vining v. State, 827 So.2d 201, 209 (Fla.2002) (stating that where the alleged individual errors are without merit, the contention of cumulative error is also without merit).

III. HABEAS CORPUS
Phillips raises four claims in his petition for writ of habeas corpus: (1) whether appellate counsel rendered ineffective assistance in failing to raise on appeal the admissibility of Detective Smith's hearsay testimony; (2) whether appellate counsel rendered ineffective assistance when he failed to raise the issue that the execution of a mentally retarded defendant was a violation of the prohibition against cruel or unusual punishment; (3) whether appellate counsel rendered ineffective assistance when he failed to raise on appeal an issue relative to the admissibility of Dr. Miller's testimony at resentencing; and (4) whether appellate counsel rendered ineffective assistance when he failed to raise on appeal other trial court rulings which may have warranted a new resentencing. We find no merit to any of these claims.
In his first habeas claim, Phillips contends that appellate counsel was ineffective for failing to raise the admissibility of Detective Greg Smith's hearsay testimony from jailhouse witnesses. Resentencing counsel did not raise a specific objection regarding Smith's hearsay testimony about what jailhouse informants Malcolm Watson, Tony Smith, and Larry Hunter told him. Because there was no motion filed or objection below, appellate counsel cannot be deemed ineffective for not raising this issue on direct appeal. See Rutherford v. Moore, 774 So.2d 637, 648 (Fla.2000) ("[A]ppellate counsel cannot be considered ineffective for failing to raise issues which [were] procedurally barred ... because they were not properly raised at trial."); Robinson v. Moore, 773 So.2d 1, 5 (Fla.2000).
In his second habeas claim, Phillips argues that he received ineffective assistance of appellate counsel when counsel failed to raise the constitutionality of executing a mentally retarded defendant. In the record on appeal, resentencing counsel did not assert that sentencing Phillips to death was unconstitutional due to his alleged mental retardation. Thus, this issue was not preserved on this basis. Again, appellate counsel cannot be deemed ineffective for failing to raise an unpreserved issue. See Rutherford, 774 So.2d at 648.
In his third habeas claim, Phillips asserts that appellate counsel was ineffective when he failed to raise the admissibility of Dr. Miller's testimony at resentencing in violation of the confidentiality requirement of rule 3.211(e), Florida Rules of Criminal Procedure.[9] We disagree.
*41 Dr. Miller initially evaluated Phillips to determine competency in 1988. At resentencing in 1994, the trial court allowed Dr. Miller to testify for the purpose of rebutting the defense's mental mitigation. When Dr. Miller testified at resentencing about his 1988 interview with Phillips, Dr. Miller did not state that he had interviewed Phillips for the determination of competency. In the portion of Dr. Miller's testimony where Phillips objected, Dr. Miller stated that he conducted a mental status examination consisting of numerous current event questions. The purpose of the exam was to evaluate Phillips's general intelligence and degree of learning. Dr. Miller testified to the type of questions he asked, Phillips's responses, and the psychological interpretation of those responses. He did not discuss anything further concerning his 1988 interview with Phillips.
Furthermore, Dr. Miller was reappointed in 1994 because Phillips's defense counsel filed a notice of intent to rely on two statutory mitigators: (1) under the influence of extreme mental or emotional disturbance; and (2) diminished mental capacity. Dr. Miller's 1994 interview with Phillips occurred only after he had placed his emotional and mental capacity at issue and after notice to his counsel. Moreover, the trial court's order appointing Dr. Miller specifically stated that Dr. Miller was to determine whether Phillips suffered from diminished mental capacity at the time of the offense. In addition, Dr. Miller was only allowed to testify in rebuttal to direct mental health testimony presented by Phillips. See Dillbeck v. State, 643 So.2d 1027, 1030 (Fla.1994). Given these circumstances, we find that Dr. Miller's testimony at resentencing was proper, and appellate counsel cannot be deemed ineffective for failing to raise a meritless issue. See Long v. State, 610 So.2d 1268, 1275 (Fla.1992).
In his last habeas claim, Phillips argues that he received ineffective assistance of appellate counsel on his first direct appeal when counsel failed to raise two issues: (1) whether the trial court abused its discretion when it admitted autopsy photos; and (2) whether the trial court erred in denying a motion for judgment of acquittal.
In the first sub-claim, Phillips moved for a standing objection to the introduction of autopsy photos immediately before opening statements on the ground that motive was no longer at issue. The trial court refused to grant a standing objection but agreed to revisit the issue at the time the photos were introduced. At the time the photographs were admitted, Phillips did not object. Thus, any issue regarding the admission of the autopsy photographs was not preserved. See Castor v. State, 365 So.2d 701, 703 (Fla.1978). Therefore, appellate counsel cannot be deemed ineffective for failing to raise this unpreserved issue on appeal. See Rutherford, 774 So.2d at 648.
*42 Phillips's second sub-claim is procedurally barred. Phillips filed a prior habeas petition regarding the conduct of his first appeal, and we denied it. See Phillips v. Dugger, 515 So.2d at 227. "Successive habeas corpus petitions seeking the same relief are not permitted nor can new claims be raised in a second petition when the circumstances upon which they are based were known or should have been known at the time the prior petition was filed." Johnson v. Singletary, 647 So.2d 106, 109 (Fla.1994). Here, the fact that appellate counsel on Phillips's first direct appeal did not raise the denial of the motion for judgment of acquittal is an issue that he could and should have known at the time he filed his first habeas petition. Thus, this claim is procedurally barred.
Accordingly, we deny Phillips's petition for habeas corpus and affirm the trial court's summary denial of postconviction relief.
It is so ordered.
WELLS, LEWIS, QUINCE, CANTERO, and BELL, JJ., concur.
WELLS, J., concurs with an opinion, in which BELL, J., concurs.
CANTERO, J., concurs with an opinion.
PARIENTE, C.J., concurs in part and dissents in part with an opinion, in which ANSTEAD, J., concurs.
WELLS, J., concurring.
I concur with the majority. I write to express my agreement with Justice Cantero that the United States Supreme Court's decision in Atkins v. Virginia, 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002), applies to Phillips and to express the basis of my conclusion.
I read Atkins to set forth a substantive federal constitutional right not to be executed if it is established that a person is mentally retarded. In this regard I adhere to the Eleventh Circuit's statement in In re Holladay, 331 F.3d 1169, 1173 (11th Cir.2003):
Although the Court ultimately rejected such a rule in [Penry v. Lynaugh, 492 U.S. 302, 340, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989)], in Atkins the Court reversed course and announced that "the Constitution `places a substantive restriction on the State's power to take the life' of a mentally retarded offender." 536 U.S. at 321, 122 S.Ct. 2242 (quoting Ford v. Wainwright, 477 U.S. 399, 405, 106 S.Ct. 2595, 91 L.Ed.2d 335 (1986)).
(Emphasis added.)
In Witt v. State, 387 So.2d 922, 929 (Fla.1980), this Court specifically stated that one category of constitutional rulings which would be cognizable in capital cases under Florida Rule of Criminal Procedure 3.850 was
changes of law which place beyond the authority of the state the power to regulate certain conduct or impose certain penalties. This category is exemplified by Coker v. Georgia, 433 U.S. 584, 97 S.Ct. 2861, 53 L.Ed.2d 982 (1977), which held that the imposition of the death penalty for this crime of rape of an adult woman is forbidden by the eighth amendment as cruel and unusual punishment.
(Emphasis added.) Atkins has made the execution of a mentally retarded person beyond the power of the state to impose, which I believe in this context means to carry out. Therefore, in accord with this specific reasoning in Witt, I would hold that Phillips can proceed with an Atkins claim. Phillips will, of course, have to establish that he is mentally retarded as that condition has been defined by our law.
*43 However, I do not believe that this is an issue of retroactivity similar to court procedures such as in Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), or other issues having to do with the admissibility of evidence or the confrontation of witnesses. The question here is whether mental retardation bars the State from executing an otherwise lawful penalty. This issue is similar to whether a person is insane to be executed. As to insane to be executed and mental retardation, the issue is whether the person is eligible for a prospective execution. I do not read Atkins as having a retroactive application in the sense that it makes the pronouncement of the death penalty illegal. Clearly, Atkins has no effect on guilt issues.
BELL, J., concurs.
CANTERO, J., concurring.
I concur in all aspects of the majority opinion. I write separately only to explain our decision to allow Phillips to file a motion under new Florida Rule of Criminal Procedure 3.203, which became effective October 1, 2004. I believe we should state explicitly what we necessarily have concluded implicitly  that the United States Supreme Court's decision in Atkins v. Virginia, 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002), applies retroactively  and explain why.
Our recent amendments to the Florida Rules of Criminal Procedure implicitly concluded, or at least assumed, that Atkins applies retroactively. Rule 3.203(d)(4) creates a procedure for raising mental retardation as a bar to execution in pending cases, in future cases, and in cases that already are final. See Amendments to Fla. Rules of Criminal Procedure & Fla. Rules of Appellate Procedure, 875 So.2d 563 (Fla.2004). However, the bench and bar would benefit from an opinion expressly addressing the issue and this case presents an opportunity to do so.
The Court did not state in Atkins whether its holding was retroactive. However, the retroactivity of its decision is apparent, at least under the standard articulated in Teague v. Lane, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) (which is different from ours), when read alongside Penry v. Lynaugh, 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989), in which the Court stated:
Thus, if we held, as a substantive matter, that the Eighth Amendment prohibits the execution of mentally retarded persons such as Penry regardless of the procedures followed, such a rule would fall under the first exception to the general rule of nonretroactivity and would be applicable to defendants on collateral review.
Id. at 330, 109 S.Ct. 2934. Although the Court rejected such a rule in Penry, the Court ultimately announced in Atkins that "the Constitution `places a substantive restriction on the State's power to take the life' of a mentally retarded offender." 536 U.S. at 321, 122 S.Ct. 2242.
In the two years since Atkins was decided, many federal and state courts have considered whether Atkins applies retroactively, and all have held that it does. See In re Holladay, 331 F.3d 1169, 1173 (11th Cir.2003); In re Morris, 328 F.3d 739, 740 (5th Cir.2003); Hill v. Anderson, 300 F.3d 679, 681 (6th Cir.2002); Clemons v. State, No. CR-01-1355, ___ So.2d ___, ___, 2003 WL 22047260, at *3 (Ala.Crim.App. Aug.29, 2003); Head v. Hill, 277 Ga. 255, 587 S.E.2d 613, 621 (2003); Williams v. State, 793 N.E.2d 1019, 1027 (Ind.2003); State v. Dunn, 831 So.2d 862, 882 n. 21 (La.2002); Johnson v. State, 102 S.W.3d 535, 539 n. 12 (Mo.2003); State v. Lott, 97 Ohio St.3d 303, 779 N.E.2d 1011, 1015 *44 (2002); Pickens v. State, 74 P.3d 601, 603 (Okla.Crim.App.2003); Franklin v. Maynard, 356 S.C. 276, 588 S.E.2d 604, 606 n. 6 (2003); cf. Ex parte Briseno, 135 S.W.3d 1, 5 (Tex.Crim.App.2004) (suggesting the retroactivity of Atkins).
The vast majority of these courts analyzed the retroactivity of Atkins using the standards articulated in Teague, which is not the standard we have historically used. I continue to believe that we should consider the retroactivity of United States Supreme Court decisions based on that Court's own standards. See Windom v. State, 886 So.2d 915, 935-52, (Fla. 2004) (Cantero, J., specially concurring). Nevertheless, a retroactivity analysis under our current law leads to the same conclusion. In Witt v. State, 387 So.2d 922 (Fla.1980), this Court held that a change in the law does not apply retroactively unless the change: (a) emanates from this Court or the United States Supreme Court, (b) is constitutional in nature, and (c) constitutes a development of fundamental significance. Id. at 931. Clearly, the holding of Atkins meets the first two prongs of Witt  that is, the United States Supreme Court issued a new rule that is constitutional in nature. Id.
The question of Atkins's retroactive application therefore rests on the third prong: whether the rule constitutes a development of fundamental significance. In Witt, we stated that most major constitutional changes fall within one of two categories: changes "which place beyond the authority of the state the power to regulate certain conduct or impose certain penalties," id. at 929, and those which are of sufficient magnitude to necessitate retroactive application as ascertained by the three-fold test of Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), and Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965).[10] 387 So.2d at 929. Atkins clearly falls within the first category  it prohibits the government from imposing the penalty of death on mentally retarded defendants, which is a substantive limit on the state's power to impose certain penalties. Cf. Penry, 492 U.S. at 330, 109 S.Ct. 2934 (applying a Teague analysis and stating that "a new rule placing a certain class of individuals beyond the State's power to punish by death is analogous to a new rule placing certain conduct beyond the State's power to punish at all" and would be retroactive because it deprives the State of the power to impose a certain penalty).
For these reasons, Atkins applies retroactively. Phillips must receive the benefit of both Atkins and new rule 3.203.
PARIENTE, C.J., concurring in part and dissenting in part.
I concur in all aspects of the majority opinion except on the issue of ineffective assistance of trial counsel relating to Phillips' possible mental retardation and organic brain damage. I would reverse for an evidentiary hearing because there are sufficient allegations to call into question the performance of resentencing counsel on the failure to investigate and present further testing on this potentially powerful mitigation.
Despite the fact that resentencing counsel was aware that both experts who examined Phillips previously testified that more testing was needed to confirm the presence or extent of brain damage and mental retardation, resentencing counsel *45 failed to pursue or present definitive evidence of Phillips' brain damage or mental retardation. In my view, these allegations in Phillips' motion for postconviction relief entitle him to an evidentiary hearing on this ineffective assistance of counsel claim. Further, the majority's decision to affirm the denial of this claim without prejudice to Phillips filing a motion under Florida Rule of Criminal Procedure 3.203 is insufficient to afford Phillips an adequate review, because any hearing conducted pursuant to rule 3.203 regarding mental retardation may be qualitatively different from one conducted on the ineffective assistance of counsel claim.[11]
As the majority acknowledges, a defendant is entitled to an evidentiary hearing on a motion for postconviction relief unless (1) the motion, files, and records in the case conclusively show that the defendant is not entitled to any relief, or (2) the motion or a particular claim is facially invalid. See Cook v. State, 792 So.2d 1197, 1201-02 (Fla.2001). In determining whether an evidentiary hearing on a claim is warranted, this Court must accept the defendant's factual allegations to the extent they are not refuted by the record. See Atwater v. State, 788 So.2d 223, 229 (Fla.2001).
Phillips asserts that the trial court erred in denying an evidentiary hearing on his claim that defense counsel failed to investigate and conduct further testing as to Phillips' possible mental retardation and organic brain damage at the time of his resentencing. Specifically, he contends that resentencing counsel never had him examined by a competent mental health expert even though counsel was aware before resentencing that further testing was necessary for a definitive diagnosis of mental retardation and organic brain damage. I agree that Phillips was entitled to an evidentiary hearing on this issue.
Before this Court remanded for new resentencing proceedings, Dr. Joyce Carbonell and Dr. Jethro Toomer testified at Phillips' initial evidentiary hearing in 1988. Both concluded that Phillips' intellectual functioning was in the borderline range of mental retardation and that he was intellectually and emotionally impaired. Further, although both Carbonell and Toomer testified that the tests they performed indicated that Phillips may suffer from organic brain damage, neither could confirm the presence or extent of the brain damage without further testing.
At resentencing, Toomer testified similarly regarding Phillips' possible brain damage, but he stated that a specialist in nerve scoping psychology would have to conduct a nerve psychological test to properly diagnose the existence and extent of any organic brain disturbance. Carbonell did not testify at the resentencing. Her testimony from the 1988 evidentiary hearing was read into evidence.
The majority's conclusion that Phillips is not entitled to an evidentiary hearing because "the record in this case is replete with mitigation testimony from both of Phillips's mental health experts," see majority op. at 37, ignores the uncontested fact that both experts admittedly lacked the ability to definitively diagnose Phillips as either mentally retarded or suffering from organic brain damage. Both experts stated that further testing was necessary and, although aware of this fact, resentencing counsel failed to investigate or secure that further testing. Moreover, postconviction *46 counsel argued at the Huff[12] hearing and appellate counsel asserted at oral argument that a mental retardation specialist and a neurologist were prepared to testify at an evidentiary hearing on Phillips' mental retardation and organic brain damage. Because the record does not conclusively refute the claim that Phillips suffered from mental retardation and organic brain damage, the trial court erred in failing to grant Phillips an evidentiary hearing on whether defense counsel was ineffective in failing to pursue the matter.
The majority's affirmance of the decision to deny Phillips a hearing on the ineffective assistance claim without prejudice for him to file a motion pursuant to new rule 3.203 will not resolve the ineffective assistance of counsel claim. The current statutory burden for establishing mental retardation as a bar to execution is different from the burden of establishing that counsel's performance was ineffective. Section 921.137(4), Florida Statutes (2004), requires proof of mental retardation by clear and convincing evidence. The ineffective assistance claim requires Phillips to demonstrate that had definitive evidence of his mental retardation been presented at the resentencing, such evidence would undermine our confidence in the imposition of the death sentence, which was recommended by a bare majority of the jurors. Allowing Phillips a hearing pursuant to rule 3.203 while denying him a hearing on the ineffective assistance of counsel claim does not afford Phillips adequate review or protect his constitutional right to counsel. I would therefore grant Phillips an evidentiary hearing on the ineffective assistance of counsel claim so it can be pursued in tandem with a mental retardation claim pursuant to rule 3.203. Fairness as well as efficiency dictate this result, especially since both claims could be adjudicated in a single hearing with the same evidence.
ANSTEAD, J., concurs.
NOTES
[1] Phillips raised five issues on direct appeal: (1) the trial court erred in allowing the State to elicit testimony relative to collateral uncharged crimes; (2) the prejudicial comments elicited by the State deprived the defendant of the fundamental right to a fair trial; (3) the trial court erred in refusing to give the alibi instruction requested by the defendant; (4) the trial court erroneously found the killing to have been especially heinous, atrocious, or cruel; and (5) the trial court improperly found the homicide to have been committed in a cold, calculated and premeditated manner.
[2] The ten claims were: (1) the State's use of false and misleading testimony and the intentional withholding of material exculpatory evidence; (2) the State's use of jailhouse informants to obtain statements; (3) deprivation of an individualized sentencing determination due to ineffective assistance at the penalty phase; (4) trial counsel rendered ineffective assistance by allowing an incompetent client to stand trial; (5) comments by the court and the prosecutor throughout the course of the proceedings resulted in Phillips's sentence of death, and diminished the jurors' sense of responsibility in violation of Caldwell v. Mississippi, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985), and the Eighth and Fourteenth Amendments; (6) inconsistent jury instructions relative to the jury's role in sentencing; (7) the trial court's shifting of the burden of proof in its instructions and the prosecutor's similar burden-shifting comments on summation; (8) ineffective assistance of counsel at the guilt phase; (9) Phillips's absence during critical trial proceedings in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments; and (10) improper use of Phillips's prior felony convictions.
[3] The six issues on direct appeal of his resentencing were: (1) Phillips's resentencing proceeding did not comport with the requirements set forth in Spencer v. State, 615 So.2d 688 (Fla.1993); (2) the trial court mishandled the jury and improperly influenced the jury to return a death verdict; (3) the "disrupt or hinder a governmental function" aggravator was improperly and over-broadly submitted to the jury and found by the court; (4) the State improperly made Phillips's prior bad acts, including uncharged matters, a focus of the resentencing, and introduced unnecessary and unreliable evidence and hearsay regarding Phillips's guilt; (5) the trial court improperly allowed the State to strike an African-American from the jury panel; and (6) the CCP aggravator cannot be constitutionally narrowed and was improperly employed.
[4] The twenty-four claims in Phillips's amended motion for postconviction relief were: (1) denial of the right to effective representation by the lack of funding available to fully investigate and prepare postconviction pleadings, understaffing, and the unprecedented workload on present counsel and staff; (2) denial of due process and equal protection rights because access to the files and records pertaining to Phillips's case in the possession of certain state agencies had been withheld in violation of chapter 119 of the Florida Statutes and Rule 3.852 of the Florida Rules of Criminal Procedure; (3) deprivation of due process rights because the State withheld evidence that was material and exculpatory in nature, which rendered defense counsel's representation ineffective and prevented a full adversarial testing of the evidence at resentencing; (4) ineffective assistance of counsel during voir dire in resentencing; (5) ineffective assistance of counsel when critical information regarding Phillips's mental state was not provided by specialized experts; (6) denial of rights under Ake v. Oklahoma, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985), at the resentencing; (7) deprivation of a fair trial guaranteed under the Sixth, Eighth, and Fourteenth Amendments due to a combination of procedural and substantive errors during resentencing; (8) innocence of the death penalty; (9) Phillips's absence from critical stages of the trial; (10) ineffective assistance of counsel for defense counsel's failure to object to the sentence of death where the jury instructions were incorrect under Florida law and shifted the burden to Phillips to prove that death was inappropriate; (11) ineffective assistance of counsel where trial counsel failed to object to the State's introduction of nonstatutory aggravating factors and the State's arguments regarding nonstatutory aggravating factors; (12) ineffective assistance of counsel where trial counsel failed to object to comments, questions, and instructions which diluted the jury's sense of responsibility; (13) ineffective assistance of counsel where trial counsel was prohibited from interviewing jurors to determine if constitutional error was present; (14) ineffective assistance of counsel where defense counsel failed to object when the prosecutor commented upon the aggravating circumstances; (15) execution by electrocution is cruel and unusual punishment or both pursuant to the federal and state constitutions; (16) Florida's capital sentencing statute is unconstitutional on its face and as applied in this case; (17) ineffective assistance of counsel where trial counsel failed to object and argue that there was a violation of the Eighth Amendment by the sentencing court's refusal to find and consider mitigating circumstances set out clearly in the record; (18) lack of an independent weighing or reasoned judgment in the trial court's sentencing order; (19) denial of a proper direct appeal of appellant's conviction and death sentence due to omissions in the record; (20) the jury's and judge's reliance upon misinformation in sentencing Phillips to death in violation of Johnson v. Mississippi, 486 U.S. 578, 108 S.Ct. 1981, 100 L.Ed.2d 575 (1988); (21) execution is prohibited due to insanity; (22) refusal of the trial court to instruct the jury that mercy towards Phillips was a proper consideration in resentencing; (23) denial of right to a fair proceeding before an impartial judge during resentencing; and (24) denial of right to a fair proceeding before an impartial judge during the postconviction proceedings.
[5] Phillips asserts two sub-issues within his first claim: (1) ineffective assistance of counsel where resentencing trial counsel did not present definitive evidence regarding Phillips's possible mental retardation and organic brain damage from specialized experts in neurology and mental retardation; and (2) denial of rights under Ake v. Oklahoma, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985), at resentencing.
[6] Claims 4(b), 4(c), 4(d), 4(f), 4(g), 5, 6(a), 6(b), 7, and 10 are all procedurally barred because they should have been raised on direct appeal. See Arbelaez v. State, 775 So.2d 909, 919 (Fla.2000); Maharaj v. State, 684 So.2d 726 (Fla.1996). Claims 4(e) and 6(c) are also procedurally barred because they were raised and rejected on direct appeal. See Phillips v. State, 705 So.2d 1320 (Fla.1997). Claim 3 is facially and legally insufficient and is therefore denied. See Maharaj, 684 So.2d at 728; Holland v. State, 503 So.2d 1250, 1251 (Fla.1987).
[7] Section 921.137(1) provides:

As used in this section, the term "mental retardation" means significantly subaverage general intellectual functioning existing concurrently with deficits in adaptive behavior and manifested during the period from conception to age 18. The term "significantly subaverage general intellectual functioning," for the purpose of this section, means performance that is two or more standard deviations from the mean score on a standardized intelligence test specified in the rules of the Department of Children and Family Services. The term "adaptive behavior," for the purpose of this definition, means the effectiveness or degree with which an individual meets the standards of personal independence and social responsibility expected of his or her age, cultural group, and community. The Department of Children and Family Services shall adopt rules to specify the standardized intelligence tests as provided in this subsection.
[8] Section 921.137, Florida Statutes (2001), was enacted on June 12, 2001.
[9] Rule 3.211(e) of the Florida Rules of Criminal Procedure provides as follows:

(1) The information contained in any motion by the defendant for determination of competency to proceed or in any report of experts filed under this rule insofar as the report relates solely to the issues of competency to proceed and commitment, and any information elicited during a hearing on competency to proceed or commitment held pursuant to this rule, shall be used only in determining the mental competency to proceed or the commitment or other treatment of the defendant.
(2) The defendant waives this provision by using the report, or portions thereof, in any proceeding for any other purpose, in which case disclosure and use of the report, or any portion thereof, shall be governed by applicable rules of evidence and rules of criminal procedure. If a part of the report is used by the defendant, the state may request the production of any other portion of that report that, in fairness, ought to be considered.
[10] The Linkletter three-fold test inquires into (a) the purpose to be served by the new rule, (b) the extent of reliance on the prior rule, and (c) the effect retroactive application of the new rule would have on the administration of justice. See Witt, 387 So.2d at 926.
[11] I do, however, agree with Justice Cantero's conclusion in his separate concurring opinion that Atkins v. Virginia, 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002), which bars execution of mentally retarded offenders, must be given retroactive application.
[12] Huff v. State, 622 So.2d 982 (Fla.1993).