TAYLOR, J.
Defendant, Jason Terrell, appeals the summary denial of his motion for postcon-viction relief, which alleged ineffective assistance of counsel. Defendant originally alleged nine grounds for relief, but he has since abandoned two of those arguments on appeal. Because we find that two of the remaining claims required an eviden-tiary hearing, we reverse and remand for an evidentiary hearing as to those claims.
The defendant was charged by information with aggravated battery on a law enforcement officer, aggravated battery, grand theft, and driving with a suspended license. The following facts were shown at trial. Denise Cobb and the defendant dated off and on for twelve or thirteen years. They had last broken up in February 2001. On June 9, 2003, the defendant appeared at Cobb’s mother’s house. He asked Cobb to get in his car, but she refused and got in her own car instead and left. The defendant followed her. He ran into the back of her car. When she made a left turn, he struck her again.
Cobb called 911 as she was driving and was able to relay the defendant’s tag number. Officer Donald Hammond spoke with Ms. Cobb and issued a BOLO for the defendant’s vehicle. Officer Carl Hannold and his partner, Officer Finstad, spotted the defendant’s car, confirmed the tag, and called for more back-up officers. The defendant then turned into a condominium complex. As soon as he turned into the condominium parking lot, the defendant sped up, swerving from side to side and driving extremely fast and recklessly.
There was only one way in and out of the complex. Officer Hannold testified that once inside the condominium parking lot, he and his partner came to a full stop and backed up towards the entrance/exit. Officer Finstad positioned the vehicle at the entrance/exit. They lost visual contact with the defendant as he pulled around the condominium. Thinking that the defendant may have parked and taken off on foot, Hannold exited the police vehicle. He intended to chase the defendant on foot. While Hannold was standing outside the door talking to his partner, he heard a loud crash.
As he looked to the north, he saw the defendant’s vehicle smash into a parked construction vehicle, knocking it partly out of the way and hitting the building so he could force his way through the construction barricade and come back around at them from the other side, southbound. Officer Hannold testified that the defendant was coming toward them, aiming his vehicle at them.
Hannold dove back into the car and yelled to Finstad that the defendant was going to ram them. Hannold jumped up onto the computer stand in the center console of the car to get away from the door jamb, where he expected the impact. Finstad put the police car in drive and tried to get them out of the way of the defendant, who was coming at a high rate of speed. Finstad was able to move the police car slightly forward, which caused the defendant to collide mostly with the back passenger door. If they had not moved, the defendant would have crashed directly into Hannold’s door. The impact knocked Hannold onto his partner’s lap. *1287 The defendant exited his disabled vehicle and began to run away. The officers chased him to the edge of the ocean, where they finally captured the defendant.
Photographs of the wrecked vehicles in them position of rest were admitted into evidence. Hannold testified that the photo shows that the police car was not blocking the entrance to the condominium.
Officer Matthew Finstad corroborated his partner’s account. He testified to hearing the defendant’s engine accelerate and his tires squeal, spin, and pick up speed as it came towards their police car. The defendant was coming right at them, so he put the car in drive and was able to move it forward a foot or two before the impact. He testified on cross-examination that the police car was not blocking the exit to the parking lot.
John Derasmo was the construction project manager. He was supervising a fourteen-man crew and performing construction work on the condominium that morning. He saw the defendant come into the condominium, followed by a police cruiser. He saw the defendant screech around the lot, plow into his truck, and “t-bone” the police car that was blocking the condominium exit. According to Deras-mo, the police car was not moving when the defendant crashed into it.
The defendant testified. During a colloquy with the trial judge, Hon. Ana I. Gard-iner, the following exchange occurred:
THE COURT: Other than you testifying, do you wish for Mr. Friedman to call any other witnesses?
THE DEFENDANT: No, ma’am.
THE COURT: Are there any witnesses that you have asked Mr. Friedman to call or to locate that have not been located?
THE DEFENDANT: No, ma’am.
The defendant testified that he hit Cobb when his foot accidentally came off the brake pedal at a traffic light. He admitted that he was driving on a suspended license. He acknowledged that he “bumped” Der-asmo’s truck, though he later admitted that he tore the bumper off. He said that he panicked, but also claimed that he accidentally hit the police car. He explained that the police car just pulled in front of him and he did not have time to stop. He claimed that the police car was in reverse and backed into him.
The defendant was found guilty of the lesser-included offense of battery on a law enforcement officer, the lesser-included offense of battery, and driving while his license was suspended. He was found not guilty of grand theft. He was sentenced to time served on the misdemeanor convictions and to ten years as a habitual offender and a prison releasee reoffender for battery on a law enforcement officer.
The defendant moved for postconviction relief only as to the battery on a law enforcement officer charge, alleging various grounds of ineffective assistance of counsel: a) failure to interview and call Tom Deal, an eyewitness to the alleged crime; b) failure to depose eyewitness John Derasmo and perform discovery as to the fourteen other construction workers who witnessed the alleged crime; c) failure to interview and call “an expert in automobile accidents,” d) failure to adequately cross-examine Officer Hannold; e) failure to adequately cross-examine Officer Fin-stad; f) failure to object to a juror who was sleeping during the defendant’s testimony; g) failure to object to the alleged illegality of his sentence; h) misadvice about waiving a PSI; and i) failure to prepare the defendant to testify. The defendant has abandoned his last two arguments on appeal.
*1288 The trial court ordered a response from the state. The state attached the entire underlying record and trial transcript as an exhibit. The court then denied the motion for postconviction relief.
A defendant is entitled to an evi-dentiary hearing on his postconviction motion unless: 1) the motion, files, and records in the case conclusively show that the defendant is not entitled to any relief; or 2) the motion or a particular claim is invalid. Phillips v. State, 894 So.2d 28, 37 (Fla.2004). In determining whether or not an evidentiary hearing is warranted, this court must accept the defendant’s factual allegations to the extent the record does not refute them. Id.
“The right to counsel is the right to the effective assistance of counsel.” Strickland v. Washington, 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) (quoting McMann v. Richardson, 397 U.S. 759, 771, n. 14, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970)). To prevail on a claim of ineffective assistance of counsel, a defendant must establish:
First, the defendant must show that counsel’s performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the “counsel” guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel’s errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.
Id. at 687, 104 S.Ct. 2052. “Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.” Id. at 690, 104 S.Ct. 2052. The standard is reasonably effective counsel, not perfect or error-free counsel. Coleman v. State, 718 So.2d 827, 829 (Fla. 4th DCA 1998). Even in cases where counsel has been unprofessional, the defendant must show that there is a reasonable probability that, but for counsels’ unprofessional errors, the result would have been different. “A reasonable probability is a probability sufficient to undermine confidence in the outcome.” Strickland, 466 U.S. at 694,104 S.Ct. 2052.
A. Failure to Interview and Call Tom Deal
In his sworn motion, the defendant alleged that he requested that his attorney interview and call Tom Deal to testify during the trial. Deal was at the construction site at the time of the alleged crime. The motion alleged that Deal would have testified that, among other things, “the police car was reversed into the path of the defendant’s car and the defendant slammed on the brakes, but the cars still impacted.” The defendant alleged that this witness’s testimony would have exonerated him because it would have supported his defense that he did not intentionally slam his car into the police car.
A defendant is required to allege what testimony defense counsel could have elicited from witnesses and how defense counsel’s failure to call, interview, or present the witnesses who would have so testified prejudiced the case. Nelson v. State, 875 So.2d 579, 583 (Fla.2004). The defendant appears to have satisfied this burden.
A claim of ineffectiveness in failing to present important exculpatory evidence cannot be resolved on the basis of the mere existence of conflicting evidence in the record. “Rather, the record must conclusively rebut the claim if the claim is to be resolved without a hearing.” Jacobs v. State, 880 So.2d 548, 555 (Fla.2004). Typically, it will be necessary to hold an evi-dentiary hearing to determine why trial *1289 counsel did not call a particular witness. See id. A trial court’s finding that defense action or inaction was the result of trial strategy will generally be disapproved if the decision is made without first holding an evidentiary hearing. Evans v. State, 737 So.2d 1167, 1168 (Fla. 2d DCA 1999).
The state argues that an evidentiary hearing on the defendant’s claims concerning his attorney’s failure to call witnesses was unnecessary because the transcript -of the colloquy conducted by the trial court showed that the defendant did not want to call any other witnesses. We agree that the defendant’s claim as to Tom Deal was refuted by the record, given that his sworn motion indicated his awareness of the substance of Tom Deal’s testimony and his availability for trial. The defendant is thus bound by his sworn answers during the colloquy. See Iacono v. State, 930 So.2d 829 (Fla. 4th DCA 2006) (holding that defendant’s sworn statements to court during plea colloquy conclusively refuted his postconviction claim that medication rendered him unable to understand his plea, and thus, his claim was legally insufficient to warrant an evidentiary hearing).
B. Failure to Interview and Call an Accident Reconstruction Expert
For the same reasons discussed above, we find that the defendant’s claim as to his attorney’s failure to call an accident reconstruction expert at trial is refuted by his sworn statement during the colloquy that he did not wish to call any other witnesses. The defendant alleged in his postconviction motion that he wrote several letters to his attorney before trial, asking him to call an “accident expert” to testify during the trial. He asserted that an expert would have testified that the defendant attempted to stop, as opposed to speeding up, as the officers testified. The sworn motion also alleged that the expert would have testified that, based on the positioning of the cars, the police cruiser traveled into the path of the defendant’s car, and that the defendant did not hit the cruiser.
Ordinarily, where, as here, the defendant has identified specific exonerating testimony which could have been provided by an expert, an evidentiary hearing will be required to determine whether the decision not to present the expected testimony was tactical or an unprofessional failure on the part of appointed counsel. See State v. Riechmann, 777 So.2d 342, 354 (Fla.2000) (deciding whether failure to call blood spatter expert was ineffective assistance of counsel after evidentiary hearing at which expert testimony was presented); see also Carmona v. State, 814 So.2d 481, 482 (Fla. 5th DCA 2002) (deciding whether defense counsel’s decision not to call physician was tactical after evidentiary hearing).
As a threshold matter, the state asserts that this claim was facially insufficient because the defendant did not name the expert whom he wished to testify. Although the defendant is usually required to identify fact witnesses by name, we are aware of no authority requiring the defendant to provide the name of a particular expert where the defendant claims that trial counsel failed to secure an expert in a named field of expertise. We thus do not agree that the defendant’s postconviction claim was facially insufficient. However, we do determine that his claim concerning an accident reconstruction expert is refuted by the record. During the colloquy, the defendant assured the court that there were no other witnesses he wanted to call in his defense. His inability to identity an expert by name did not preclude him from advising the court that he wanted his attorney to call an accident reconstruction expert. As his sworn postconviction motion indicated, the defendant had asked his *1290 attorney to retain an accident reconstruction witness, and he was aware of the potential benefit of such expert testimony. We therefore conclude that the trial court did not err in determining that the defendant was not entitled to an evidentiary hearing on this claim.
C. Failure to Depose John Derasmo and Conduct Further Investigation
The defendant alleged that his attorney failed to depose state witness John Derasmo, who testified at trial that there were fourteen other men at the construction work site that day. According to the defendant’s sworn motion, had defense counsel taken Derasmo’s deposition he could have obtained the names of the other eyewitnesses to the collision, interviewed them, and found other witnesses to testify that the defendant was attempting to stop his car and did not intentionally strike the police car.
Counsel has a duty to make a reasonable investigation or to make a reasonable decision that makes a particular investigation unnecessary. Strickland, 466 U.S. at 691, 104 S.Ct. 2052. “In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness under all the circumstances, applying a heavy measure of deference to counsel’s judgments.” Id. There is nothing in the record refuting this allegation and thus an evidentiary hearing was required as to this issue.
D. Failure to Object to a Sleeping Juror
The sworn motion alleged that the defendant informed defense counsel that while he was testifying, one of the jurors, Ms. Porter, was “sleeping and falling over.” Defense counsel failed to object. The state has essentially confessed error as to the trial court’s failure to hold an evidentiary hearing as to this allegation. This confession is well-taken. In Simo v. State, 790 So.2d 1190, 1191 (Fla. 4th DCA 2001), we found that a claim that defense counsel had failed to object to a sleeping juror was legally and factually sufficient and that it was error to have summarily denied that claim.
Based on the foregoing, we reverse and remand for an evidentiary hearing on the following claims: 1) failure to depose John Derasmo and conduct a follow-up investigation; and 2) failure to object to the sleeping juror. We find that the defendant’s remaining arguments are without merit.

Reversed and Remanded.

MAY, J., concurs.
HAZOURI, J., dissents with opinion.